IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

DWIGHT EDWARD OSBORN                                               PLAINTIFF

V.                              NO.  1:07cv00040 JWC

MICHAEL J. ASTRUE,                                                DEFENDANT
Commissioner, Social
Security Administration


MEMORANDUM OPINION AND ORDER

Plaintiff, Dwight Edward Osborn, appeals from the Commissioner's final denial of

his claims for disability insurance benefits (DIB).  The standard of review is to determine

whether the findings of fact are supported by substantial evidence in the record as a whole

and whether the Commissioner's decision is free of legal error.  42 U.S.C. § 405(g);

*Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003); *Long v. Chater*, 108 F.3d 185, 187

(8th Cir. 1997).  Substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389,

401 (1971).  If it is possible to draw two inconsistent conclusions from the evidence and

one of these conclusions represents the Commissioner's findings, the Commissioner's

decision must be affirmed.  *Baldwin*, 349 F.3d at 555.

Plaintiff was 47 years old at the time of the hearing, has a high school education and

past relevant work experience as a truck driver.  He has alleged disability due to multi-

vessel coronary artery disease following a coronary bypass, osteoarthritis of the cervical

spine and depression, with an alleged disability onset date of October 30, 2003.  Plaintiff

remained insured for DIB purposes through March 31, 2007.

An Administrative Law Judge (ALJ) conducted a hearing on May 12, 2006.

Subsequent to the hearing, Plaintiff submitted additional medical records and reports, some of which he submitted after October 25, 2006, the date of the ALJ's decision.  In rendering his decision of October 25, 2006, the ALJ used the five-step evaluation process required by Social Security Regulations.[1]

At step one, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.

At step two he found that Plaintiff had the following severe impairments: "acute myocardial infarct secondary to multivessel coronary artery disease status post coronary artery bypass times three and osteoarthritis of the cervical spine."  Although Plaintiff had alleged depression as an impairment, the ALJ found that this condition was not "severe."

At step three, he found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings").

At step four, the ALJ made a credibility finding that while the medically determinable impairments could reasonably be expected to produce Plaintiff's alleged symptoms, he was not entirely credible in reporting their intensity, persistence and limiting effects.  The ALJ found Plaintiff's residual functional capacity (RFC) to be for a full range of light work, stating that Plaintiff could lift ten pounds frequently and twenty pounds occasionally, could stand or walk six hours in an eight-hour work day with normal breaks and could sit two hours in an eight-hour workday with normal breaks.  Based on this RFC, the ALJ determined that Plaintiff could not return to his past relevant work as a truck driver.

---

[1]   *See* 20 C.F.R. § 404.1520.

At step five, the ALJ considered Plaintiff's RFC, age, education and work experience together with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and determined that Medical-Vocational Rule 202.21 directed a finding of "not disabled." Plaintiff raises several grounds for reversal. For the reasons stated below, the case will be remanded for further development and reconsideration.[2] Because I find that the RFC assessment is not supported by substantial evidence and because evidence accepted by the Review Council after the ALJ's decision impacts the assessment, I will discuss the RFC determination first.

<u>The Residual Functional Capacity Assessment</u>

The ALJ found Plaintiff's RFC to be for a full range of light work, stating that Plaintiff could lift ten pounds frequently and twenty pounds occasionally, could stand or walk six hours in an eight-hour work day with normal breaks and could sit two hours in an eight-hour workday with normal breaks. Plaintiff argues that the ALJ's determination of his residual functional capacity was deficient for several reasons. While some of the stated grounds are not well taken, I do agree that the ALJ's findings regarding RFC are unsupported by substantial evidence.

Plaintiff's major conditions are cardiovascular disease and neck, shoulder and arm pain. The coronary artery disease is well-documented, beginning with a myocardial infarction in April 2002. The attending physician diagnosed him with multi-vessel coronary disease with occlusion of the proximal right coronary artery and heavily diseased left system. (Tr. 167.) Plaintiff underwent a three-vessel coronary bypass on April 16, 2002.

---

[2] The parties have consented to the jurisdiction of the United States Magistrate Judge.

There were complications which were successfully resolved, but approximately four months later, in August 2002, he presented again with chest pain.  His right coronary artery was occluded, and the circumflex was 99% restricted.  This was partially corrected with angioplasty.  (Tr. 143.)  Plaintiff was again admitted to the hospital with chest pain in mid January 2003, and a coronary angiogram showed: "The left main coronary is free of significant disease.  The circumflex and left anterior descending, for the most part, are occluded.  There is [sic] some small branches that are derived from the left circulation and there is some collateral filling of the distal branches of the small right coronary.  The right coronary artery is occluded in its mid-portion."  (Tr. 119.)  The doctor concluded that no further treatment, except for possible medication was indicated at that point.  (Tr. 120.)  On June 3, 2004, Plaintiff was admitted with palpitations and numbness of his arms.  Echocardiogram and cardiac Doppler revealed segmental wall motion abnormalities, compatible with coronary disease; a mild reduction in systolic left ventricular function and probable mild diastolic dysfunction of the left ventricle.  His overall ejection fraction was reduced and estimated to be in the 40% range. (Tr. 98.)  In January 2005, Dr. Van Grouw, the attending cardiologist approved Plaintiff for a surgical procedure involving lymph node removal, assessing his condition as "Coronary artery disease status post previous coronary artery bypass grafting with no recurrent ischemic sounding symptoms."  (Tr. 250.)  However, on April 19, 2005, Plaintiff went to the White River Medical Center complaining of chest pain, tightness, nausea, and shortness of breath, and he was sweating profusely.  He said he felt pressure like his prior myocardial infarction, was hurting all over and was fatigued after walking.  (Tr. 75.)  Doctors performed a cardiac catheterization, selective coronary arteriogram, coronary artery bypass graft study and an internal mammary study.

4

The findings on the coronary arteries were: "The left main coronary feeds some scraps of the left anterior descending and circumflex systems, but the major branches are occluded. The right coronary artery is occluded in its midportion." (Tr. 77.) The bypass graft study revealed:

> The patient had two previously placed saphenous grafts. The graft to the right was occluded, which had been the case previously. The graft to the circumflex is widely patent. The previously placed stent is widely patent as well. This feeds the distal circumflex and provides collaterals to the distal right. The internal mammary to the left anterior descending is patent and feeds this vessel adequately.

(Tr. 78.) The impression was "coronary artery disease with severe native three-vessel disease and intact grafts to the left anterior descending and the circumflex with minimal collateralization from the circumflex system fed by the graft to the distal right."

It is clear from the medical history that Plaintiff remains subject to serious cardiovascular disease and that the blood supply to his heart is compromised. What is not clear is the extent to which this condition affects Plaintiff's residual functional capacity. The sole medical assessments in the record are those of Dr. Wornock, Plaintiff's primary care physician, and Dr. Van Grouw, a treating cardiologist. Dr. Wornock's opinion was that Plaintiff is easily fatigued due to his heart disease. (Tr. 317.) Dr. Van Grouw said that Plaintiff's chest pain was related to exertion, primarily walking and bending, but also to deep breathing. The pain was relieved by rest. (Tr. 248.) It is difficult to see what medical evidence the ALJ relied upon to determine RFC. The only other functional evaluation was done by a non-examining, non-physician agency caseworker. The ALJ's findings mirror that assessment, except that for an unexplained reason, he found that Plaintiff could sit for only two hours, whereas the caseworker found he could sit for six. "Because a claimant's

5

RFC is a medical question, and ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008), citing *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). Due to the complicated nature of coronary vessel disease, the existing record is simply not adequate to serve as a basis for the findings.

The RFC picture is further complicated by Plaintiff's neck; shoulder and arm pain. At the time of the ALJ's decision, the only available evidence consisted of Plaintiff's complaints, records of complaints made to doctors of pain, a 2001 MRI of the cervical spine which showed only some spurring at two levels and perhaps slight encroachment on the neural foramina on the left side at C3-4 (Tr. 217), and a diagnosis of arthritis in Plaintiff's shoulders and chest wall. There was little objective evidence to corroborate Plaintiff's complaints of disabling or even significant pain. However, after the ALJ had made his decision, Plaintiff went to the White River Medical Center complaining of severe pain in the neck and shoulder. An MRI of his right shoulder revealed a "large supraspinatus tear." (Tr. 329.) This indicates Plaintiff suffers from a rotator cuff problem in addition to any arthritis of the cervical spine. The supraspinatus is one of the four muscles of the rotator cuff attached to the scapula on the back through a single tendon unit. According to authoritative medical authority, a tear can be the result of specific injury, but most tears are the result of overuse of the muscles and tendons for years.[3] Whether that is the case here is uncertain, and to what extent the condition affected his ability to work during the relevant period is unanswered as well. However, Plaintiff has been

---

[3] *See*, <http://orthoinfo.aaos.org/topic.cfm?topic=A00064>, a website of the American Academy of Orthopaedic Surgeons.

complaining of neck, shoulder and arm pain, allegedly increased by activity, for years, the first entry being in 2001. Over the following years he made other doctor visits with similar complaints.[4] There is the distinct possibility that the condition did significantly affect his RFC during the relevant period. Rotator cuff problems could make it difficult for him to push or pull or to work overhead. The MRI also provides an objective basis for Plaintiff's complaints of pain and bolsters his credibility.

Under the circumstances, the case will be remanded for further development of the record as to functional limitations arising from Plaintiff's cardiovascular disease and from his rotator cuff injury. On remand, the ALJ should seek further medical evaluation of both conditions, including a detailed and meaningful functional assessment, either from treating physicians or from consultative, examining physicians.

<u>Opinion of Dr. Wornock and Limitations Identified by Dr. Van Grouw</u>

Plaintiff complains that the ALJ ignored the opinion of Dr. Wornock that Plaintiff is not capable of maintaining meaningful employment due to his severe coronary artery disease and arthritis of his shoulders, spine and chest wall, which result in his becoming easily fatigued and an inability to tolerate any sustained physical activity. He also complains that the ALJ did not consider the limitations mentioned by Dr. Van Grouw; namely, that Plaintiff's chest pain was related to exertion, primarily walking and bending, but also to deep breathing. The ALJ received Dr. Wornock's opinion after the hearing but clearly before the decision was rendered. He did not specifically mention it in his decision. Further, it is not clear whether he considered the limitations stated by Dr. Van Grouw.

---

[4] *See*, for example, Tr. 219, 220, 221, 223.

7

Plaintiff is correct that both the Social Security regulations and case law require the ALJ to specifically state why he discounts an opinion from a treating physician.  This may or may not have been harmless error in this case, as Defendant argues, but on remand, the ALJ should be careful to explain the weight he gives any medical opinion or statement of limitations, whether now in the record or added later as the result of the additional evidence developed.

### Failure to Develop the Record on Plaintiff's Depression

Plaintiff argues that the ALJ had the duty to develop the record regarding Plaintiff's mental condition.  This argument is based on the mere fact that the record contains some references to the assessment that Plaintiff was depressed and that he had been prescribed Zoloft and Lexapro.  Whether the ALJ would have been required, as part of his duty to develop the record, to gather more information on Plaintiff's mental state is questionable under the circumstances of this case.  That being said, because the case is being remanded, the ALJ should refer Plaintiff for a psychological examination.  Given his overall health condition, Plaintiff's mental state could have a significant effect on his ability to meet the requirements of employment.

### Credibility Determination

Plaintiff says the ALJ's credibility determination did not meet the required standard and his finding that Plaintiff's complaints were not credible to the extent alleged was faulty. It is not necessary to rule on this at this point.  The additional objective evidence of a rotator cuff impairment, which gives added support to Plaintiff's subjective complaints, and the additional medical evidence to be obtained on remand will undoubtedly require a re-assessment of credibility.  On remand, the ALJ should be careful to follow the requirements

8

of the regulations and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).

## Lay Witness Testimony

Plaintiff argues that the ALJ erred by rejecting the testimony of Plaintiff's lay witness without comment.  Again, this alleged error, if error it be, can be corrected on remand.

## Use of Medical-Vocational Guidelines

Plaintiff argues that the ALJ erred by using the Guidelines to find him "not disabled" because Plaintiff suffers from nonexertional impairments which diminish his residual functional capacity to perform the full range of activities listed in the Guidelines.  Plaintiff is of course correct that the Guidelines must not be used for final determination if such nonexertional impairments exist.  On remand, the ALJ will make a decision whether the Guidelines may be used or whether testimony from a vocational expert would be necessary, based on his evaluation of the additional evidence to be obtained.

## Conclusion

IT IS THEREFORE ORDERED that the final decision of the Commissioner is reversed and remanded for action consistent with this opinion.  This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan,* 501 U.S. 89 (1991).

IT IS SO ORDERED this 17th day of September, 2008.


_____
UNITED STATES MAGISTRATE JUDGE